UNITED STATES of America, Appellee,

v.

Eugene SLAY, Appellant.

UNITED STATES of America, Appellee,

v.

Leroy TYUS, Appellant.

UNITED STATES of America, Appellee,

v.

James CULLEN, Appellant.

UNITED STATES of America, Appellant,

v.

Eugene SLAY, Leroy Tyus, and James Cullen, Appellees.

Nos. 87–2566 to 87–2568 and 88–1040.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1988.

Decided Oct. 6, 1988.

---

13. Manager's Employment Agreement dated Au-
gust 12, 1985, Appendix at 35.

Before ARNOLD, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLE,[*] District Judge.

ARNOLD, Circuit Judge.

Eugene Slay, Leroy Tyus, and James Cullen were convicted in June 1987 of violating the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, in connection with their roles in seeking the award of a cable television franchise from the City of St. Louis. The jury had been instructed that a scheme to deprive the citizens of St. Louis of their intangible right to good government could constitute "a scheme or artifice to defraud" within the meaning of the mail and wire fraud statutes. Three weeks after the jury returned its verdict, the Supreme Court of the United States rejected the theory that the mail fraud statute protects the intangible right of the citizenry to good government, and read the statute as "limited in scope to the protection of property rights." *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987).

In response to the defendants' post-trial motions following *McNally*, the District Court[1] set aside the jury's verdicts against Slay, Tyus, and Cullen "due to the fundamental instructional error in this case." *United States v. Slay*, 673 F.Supp. 336, 351 (E.D.Mo.1987). The Court concluded that "[t]he error in the instructions ... [permitted] the jury to convict defendants for conduct not criminalized by ... the mail and wire fraud statutes...." *Id.* at 347. After striking all references to the "intangible rights" theory from the indictment against the defendants, the Court found that the indictment still charged an offense, and so denied the defendants' motions to dismiss the indictment. Instead, the District Court ordered a new trial for the defendants on the charges in the indictment which continued to state an offense after *McNally*. *Id.* at 353.

Jim J. Shoemake, St. Louis., Mo., Thomas M. Utterback, Washington, Mo., and Barry Short, St. Louis, Mo., for appellant.

James E. Crowe, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

[*] The Hon. Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

Both the defendants and the government appeal this order. The defendants argue that the District Court struck such a substantial portion of the original indictment that the remaining language no longer expresses the grand jury's intention. The defendants urge that a new trial on the pared-down indictment would therefore violate their Fifth Amendment right to be tried only on an indictment of a grand jury. We hold that our Court does not have jurisdiction over this interlocutory appeal, and so we dismiss the defendants' appeal, without prejudice to their right to raise this contention in a later appeal if they are convicted at the new trial. In its cross-appeal, the government argues that the guilty verdicts should not have been set aside, because the jury must have found a scheme to defraud the City of property rights. The government concludes that the defendants' convictions remain valid, and that the erroneous instruction was harmless error. We disagree, and we affirm the District Court's order granting a new trial.

## I.

This prosecution arises from the submission of a competitive bid for the award of the cable television franchise in the City of St. Louis in 1983. According to the indictment, the St. Louis ordinance governing the award of a cable television franchise required any application for such a franchise to provide the names, addresses, and occupations of the officers and major stockholders of the applicant corporation. Indictment, No. 86–0067, CR(1), ¶ 1–2. The ordinance further required the applicant to disclose "all agreements and understandings ... between the applicant and any other person with respect to the proposed franchise ...," and provided the penalty that "[i]f a franchise should be granted to a person posing as a straw party for or representative of another undisclosed person, such franchise shall be deemed void...." Indictment ¶ 3. The indictment charges that the defendants participated in a scheme to submit an application for the franchise on behalf of Archway Cablevision, Inc., which falsely represented Archway's ownership and concealed the actual ownership and control interests of defendant Slay and an unindicted co-conspirator, Sorkis Webbe, Sr. Indictment, ¶ 11. The indictment also charges that the defendants arranged for bribes to be paid to members of the St. Louis Board of Aldermen to gain support for Archway Cablevision's fraudulent application. Indictment ¶ 11(m). In the language of the original indictment, defendants Slay, Tyus, and Cullen are charged, along with Tom Zych, President of the Board of Aldermen, with having:

intended to devise a scheme and artifice to defraud:

The City of St. Louis and its citizens of their right to the conscientious, loyal, faithful, disinterested and unbiased services and actions in the performance of official duties of certain members of the Board of Aldermen of the City of St. Louis and their right to have those duties performed free from corruption, extortion, bribery, partiality, willful omission, dishonesty, official misconduct, conflict of interest and fraud; and

The City of St. Louis, its officials and employees, including the Mayor, the City Counselor, the Board of Aldermen and the Comptroller, of their right to be aware of all material and relevant facts when analyzing and entering into contracts with entities seeking the award of a cable television franchise for the City of St. Louis, in particular Archway Cablevision;

and to obtain money and property, specifically a cable television franchise from the City of St. Louis....

Indictment ¶ 11. The original indictment thus charged the defendants with devising a scheme which would deprive the citizens and elected officials of St. Louis of both their intangible rights to good government and full disclosure and property in the form of a cable television franchise.

Unlike the indictment, the jury instructions were phrased in the disjunctive, so that the jury could convict the defendants if it found either "[t]hat the defendants ... intended to devise a scheme or artifice to defraud the City of St. Louis" of the honest

services of its officials and employees, or that "the defendants ... intended to devise a scheme to obtain property from the City of St. Louis by means of false or fraudulent pretenses, representation, or promises or the deceitful concealment of material facts...." Instructions Nos. 37 and 39. The Court specifically instructed the jury that

[a] scheme to deprive the citizens of the City of St. Louis of the conscientious, loyal, faithful, disinterested and unbiased services and actions of a member of the Board of Alderman ..., comes within the meaning of the term 'scheme or artifice to defraud' as that term is used in the mail and wire fraud statutes.

(Instruction No. 40), and that

... when a defendant has a duty to disclose correct ownership interest information, a scheme to conceal from public officials ... such information, if it is material and relevant to decisions which they are required to make in their official capacities about entering into a cable television franchise, also comes within the meaning of a 'scheme or artifice to defraud' as that term is used in the mail and wire fraud statutes.

Instruction No. 40–A. In particular, the Court instructed the jury that "[t]he object of the scheme need not be money or any form of tangible property, but may also be intangible rights." Instruction No. 41.

In a general verdict, the jury convicted Slay, Tyus, and Cullen on five counts of mail and wire fraud, but acquitted co-defendant Tom Zych of the same charges. Three weeks later, however, the United States Supreme Court invalidated the "intangible right to good government" theory of mail fraud prosecutions. In granting the defendants' motion for a new trial, the District Court struck all sections of the original indictment which articulated the invalidated "intangible rights" theory. 673 F.Supp. at 351.

## II.

■ The defendants argue that the indictment should now be dismissed in its entirety. Relying on *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), the defendants claim that the striking of the invalid portions of the indictment has substantially changed its terms, so that the remaining charges no longer reflect the grand jury's intention. The defendants conclude that a new trial on the edited indictment would violate their Fifth Amendment right to be tried only on a presentment or indictment of a grand jury.

We lack jurisdiction over this interlocutory appeal. The federal appellate courts have jurisdiction only over appeals from "final decisions of the district courts," 28 U.S.C. § 1291, with some exceptions not here relevant, and the defendants' case has not yet been finally decided by the District Court. In general, the rule of finality imposed by § 1291 "... prohibits appellate review until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984) (citation omitted).

There are rare exceptions to the final-judgment rule of appellate jurisdiction in criminal cases, in which a pre-trial ruling may be considered a "final decision" for purposes of § 1291, see *Flanagan*, 465 U.S. at 265–66, 104 S.Ct. at 1054–55. The Supreme Court has specifically held, however, that an interlocutory appeal challenging the sufficiency of an indictment is not such an exception. In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court considered whether a refusal to dismiss an indictment could be an appealable "collateral order" under the criteria developed in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Where the pre-trial challenge to an indictment was based on a claim of former jeopardy, the Court found that the District Court's order was conclusive, that it "was not simply a 'step toward final disposition of the merits [which would] be merged in final judgment,' " and that it "involved an important right which would be 'lost, probably irreparably,' if review had to await final judgment...." *Abney*, 431 U.S. at 658, 97 S.Ct. at 2039 (citing *Cohen* ). The *Abney* Court held that a lower court's pre-

trial order rejecting a double-jeopardy claim was appealable, but the Court refused to extend appellate jurisdiction where the pre-trial order simply concerned a challenge to the sufficiency of an indictment. 431 U.S. at 663, 97 S.Ct. at 2042. Unlike an order denying a double-jeopardy claim, an order rejecting a challenge to the sufficiency of an indictment "is plainly not 'collateral' in any sense of that term; rather it goes to the very heart of the issues to be resolved at the upcoming trial." *Id.* When a motion to dismiss an insufficient indictment is denied, the defendant has not irreparably lost a right comparable to the constitutional immunity from successive prosecutions, since the issue of the indictment's sufficiency "is such that it may be reviewed effectively, and, if necessary, corrected if and when a final judgment results." *Id.*

The defendants argue that the problem with the current indictment is not simply its legal insufficiency; according to the defendants, the deletions have altered the original indictment so much that the defendants are now being held to answer to charges for which the grand jury might not have chosen to indict them. As a result, the defendants urge that their Fifth Amendment right to be tried only on a grand jury indictment has been infringed, and that this pre-trial denial of a constitutional right is immediately appealable under the rationale in *Abney*. We are not persuaded. Under the defendants' approach, virtually any claim arising from deletions in an indictment could be translated into a Fifth Amendment claim, in the sense that the defendant might have been haled into court without an indictment ex-

pressing the intent of a grand jury. On the force of the defendants' argument, all pre-trial orders striking surplusage in indictments would immediately become appealable, and this is a result that *Abney* does not sanction. Here, the defendants retain the right to raise the validity of their modified indictments on appeal, in the event they are convicted on retrial.[2] The defendants' appeal is dismissed.

### III.

■ The government cross-appeals the District Court's order granting a new trial under 18 U.S.C. § 3731. The government concedes that the jury instructions which outlined the "intangible rights" theory were erroneous in light of *McNally*, but it contends that the instructional error was harmless inasmuch as the indictment and trial of the defendants clearly centered on a scheme to obtain property from the City of St. Louis. Accordingly, the government concludes that the jury's guilty verdict must be construed as a conviction for conduct criminalized by the mail and wire fraud statutes as interpreted by *McNally*.

In this case, the jury was instructed to convict the defendants if the prosecution proved either a scheme to deprive the City of St. Louis of its intangible rights or a scheme to obtain property by means of false and fraudulent pretenses. The former ground is insufficient to support a mail fraud conviction, while the latter ground is sufficient under *McNally*. It is a fundamental rule that where a jury has been instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, "[the] general

---

**2.** This is not a case in which the grand jury proceedings have themselves been tainted by prosecutorial misconduct. Under the analysis adopted in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), a conviction by a petit jury may render an irregularity in the grand jury proceedings harmless error, and therefore effectively unreviewable on appeal after conviction. The Ninth Circuit has twice held that the *Mechanik* harmless-error rule indirectly creates jurisdiction for interlocutory appeals concerning grand jury improprieties, since defendants can obtain effective relief from an improperly obtained indictment only

before conviction. *United States v. Benjamin*, 812 F.2d 548 (9th Cir.1987); *United States v. Dederich*, 825 F.2d 1317 (9th Cir.1987). In this case, however, the defendants' contention (which we do not evaluate) is that they are being tried on charges not found by the grand jury, which, if true, could not be cured by a conviction by the trial jury. In this situation, the harmless-error analysis in *Mechanik* would not apply, and the defendants' jurisdictional claims could be effectively reviewed after final judgment. See *United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir.1988) (en banc).

verdict must be set aside ..., because the verdict may have rested exclusively on the insufficient ground." *Zant v. Stephens*, 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983); *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931).

The government argues that an exception to the rule in *Zant* and *Stromberg* has recently emerged in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), and *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). In these cases, the Supreme Court held that convictions predicated on erroneous jury instructions might be sustained without retrial if the reviewing courts could "find that the record developed at trial established guilt beyond a reasonable doubt...." *Rose*, 106 S.Ct. at 3107, quoted in *Pope*, 107 S.Ct. at 1922. The government contends here that, on the evidence presented at trial, there can be no reasonable doubt that the jury's general verdict of guilty necessarily incorporated a finding of guilt on the legally valid property theory.

The government's burden is particularly heavy where, as here, our harmless-error analysis requires us to reach factual conclusions about the evidence adduced at trial (a task normally reserved exclusively for the jury), rather than to reach legal conclusions about matters (like criminal procedure) which are more securely within our expertise as an appellate court. Furthermore, we begin with a strong inclination to credit the District Court's assessment that the instructional error was not harmless beyond a reasonable doubt, since the District Court's understanding of the trial issues is necessarily far greater than ours can be on review of a cold record.

This is not a case, like *Rose* or *Pope*, in which a jury has clearly found a single course of conduct, like an intentional killing or the distribution of pornographic literature, and the issue on appeal concerns the proper legal characterization of the conduct found by the jury. In this case, it is difficult to reach a reliable conclusion about what conduct the jury actually found in reaching its general verdict. The indictment alleges an extremely complex set of related but distinct schemes involving bribery, withholding of information, and political influence-peddling, with the participation of several people playing different roles. Our review of the charges against the defendants is further complicated by the jury's subsequent acquittal of Tom Zych, one of the central figures in the events alleged in the indictment. On review of the record, we cannot say with assurance which allegations of the indictment the jury believed, and this basic factual ambiguity in the general verdict precludes a reliable legal analysis of whether a correctly instructed jury would have found that this conduct (whatever it may have been) violated the mail and wire fraud statutes.[3]

The main thrust of the government's argument is that every form of conduct alleged in the indictment furthered the central plan to obtain property—i.e., a cable television franchise—from the City of St. Louis by false or fraudulent means, and so every action for which the defendants were indicted was criminalized under *McNally*. In effect, the government is arguing that the "intangible rights" instructions were surplusage, since the jury could not have found a scheme to defraud the City of St. Louis of its intangible rights separate from a (criminal) scheme to obtain money or property.

Our review of the trial record does not support the government's theory. First, the very question of whether the City's cable television franchise was a thing of value was left to the jury to resolve. In

---

**3.** The government argues that the acquittal of Tom Zych provides a clue from which we can logically deduce that the jury convicted the remaining defendants for a scheme to obtain property, since Zych was indicted under the "intangible rights" theory alone. The District Court considered this argument and concluded

that too many alternate explanations for the jury's verdict remained under which the remaining defendants could have been convicted on an impermissible ground. 673 F.Supp. at 348. Our review of the record provides no reason to reject the District Court's conclusion.

the instruction which formulated the "property" theory, the jury was instructed that:

[i]f you find that the defendants knowingly used or intended to use false or fraudulent representations ... to obtain the City's cable television franchise and *if you find that this franchise was a thing of value,* then you may find a 'scheme or artifice to defraud.'

Instruction No. 40–B (emphasis supplied). We have no way of knowing whether a properly instructed jury would have convicted under this instruction. The jury might have concluded, for example, that the withholding of ownership information, while it defrauded the City of its intangible right to know who was profiting from the franchise, did not diminish either the value of the franchise or the revenue the City would receive from the successful bidders. A jury which found that the franchise was not a thing of value, or that the City was not defrauded of any valuable property, could still have convicted the defendants on the "intangible rights" theory.

The government argues finally that the mail fraud statutes do protect intangible property interests in information, citing *Carpenter v. United States,* — U.S. —, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). The government, relying on *Carpenter,* proposes that the "property" of which the defendants defrauded the City was not the cable television franchise, but the information concerning the ownership and control interests behind Archway's bid for the franchise. While the government's equation of information with property is ingenious, the theory loses its force in this case. First, the jury instructions permitted a conviction for bribing City officials (Instruction No. 40), even if the jury did not believe that the

defendants intended to conceal ownership information. After *McNally,* a scheme to deprive the City of the "honest services" of its elected officials does not constitute mail or wire fraud, and so the possibility that the defendants were convicted only for a scheme to bribe or influence members of the Board of Aldermen requires that their convictions be vacated.[4]

Even if we could be sure that the jury had convicted defendants for concealing information, *Carpenter* would not support the convictions. In *Carpenter,* the Supreme Court upheld the mail fraud conviction of an employee of the *Wall Street Journal* who stole confidential information about the stock market, a commodity which is the *Journal's* chief stock-in-trade. By contrast, the City of St. Louis does not trade or sell information about cable company ownership. The information which the prosecution labels "property" was at all times in the possession of the defendants, and the object of their alleged scheme was to withhold, rather than to obtain, this information from the City. Withholding valuable information from the City is not the same thing as depriving the City of its property, and only the latter conduct violates the mail fraud statutes. See *United States v. Ochs,* 842 F.2d 515, 526 (1st Cir. 1988); *United States v. Covino,* 837 F.2d 65, 71–72 (2d Cir.1988).

Furthermore, this theory is inconsistent with *McNally.* In *McNally,* two Kentucky state officials and a private associate had been convicted of mail fraud for awarding a state insurance contract to parties who paid commissions from this contract back to an entity controlled by the defendants. The jury had been instructed that a scheme

---

**4.** Several courts have applied a "tangible-property" interpretation to pre-*McNally* "intangible-rights" convictions for public corruption, by holding that an agent's receipt of a bribe constructively defrauds the principal of the proceeds of this breach of trust. See, *e.g., United States v. Runnels,* 833 F.2d 1183, 1192 (6th Cir. 1987), *reh'g en banc granted,* 843 F.2d 909 (6th Cir.1988); *United States v. Richerson,* 833 F.2d 1147, 1157 (5th Cir.1987). Whatever the validity of this approach to prosecutions of officials receiving bribes, *cf. United States v. Ochs,* 842 F.2d 515, 526 (1st Cir.1988) (rejecting *Runnels*

and *Richerson,*) the "constructive trust" doctrine has no application to persons accused of scheming to pay bribes rather than to receive them. It strains language to the breaking point to argue, for example, that defendant Slay defrauded the City of St. Louis of money simply by offering money to a city official. The money allegedly offered was properly Slay's, not the City's, and Slay's dishonest use of his own money would not by itself be a cognizable loss to the City for purposes of the mail fraud statutes. See *Ochs, supra.*

to defraud the citizens of Kentucky could be made out by finding that the defendants participated in a kick-back scheme without disclosing to state officials their ownership interests in the entity which received the kick-back payments. 107 S.Ct. at 2878–79. The Supreme Court held that the defendants' failure to disclose their ownership interests to persons in state government did not support a conviction in *McNally*, but this failure to disclose valuable information is precisely the basis for the government's "intangible property" theory in this case. We do not read *Carpenter* to overrule *McNally* in this manner. "The mail fraud statute clearly protects property rights," like the possession of confidential stock information, "but does not refer to the intangible right of the citizenry to good government." *McNally*, 107 S.Ct. at 2879. We conclude that the *McNally* rule does not change when the "intangible right to good government" is translated as "the intangible property interest of the citizenry in information relating to dishonest activities affecting good government."[5]

Finally, the government argues that the District Court erred in striking all references to acquitted co-defendant Tom Zych, on the ground that this order enforces nonmutual collateral estoppel against the government in violation of *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). The government appears to misapprehend the District Court's order. The District Court struck all passages of the indictment relating to the "intangible rights" theory, not because Tom Zych was acquitted of these charges, but because *McNally* invalidated this theory of the prosecution. For all remaining references to Zych in the indictment, the Court held merely that it would read them "in light of the fact that the jury acquitted Tom Zych on all charges...." 673 F.Supp. at 351. This reading does not strike relat-

ed charges against the other defendants. In subparagraph 11(1), for example, Zych, Slay, Tyus, and Cullen are charged with concealing from the City of St. Louis the true ownership interests in Archway Cablevision, in violation of Ordinance 58462. This allegation of the indictment continues to stand against Slay, Tyus, and Cullen, although to the extent that Zych's participation becomes an essential issue on retrial, his acquittal may be probative evidence for the defense. We find no abuse of discretion in the District Court's order concerning references to Zych in the indictments.

Accordingly, the defendants' appeal is dismissed, and the District Court's order granting a new trial is

AFFIRMED.

---

5. The *McNally* Court strongly suggested that the Kentucky state officials' convictions for accepting kick-backs on insurance commissions could have been sustained if the jury had been required to make a finding that the Commonwealth of Kentucky had been deprived of property as a result of the scheme. The Court implied that a properly instructed jury might have

reached a valid mail fraud conviction in *McNally* if it found, for example, that "... the Commonwealth would have paid a lower premium or secured better insurance," or that "... the Commonwealth was deprived of control over how its money was spent." *McNally*, 107 S.Ct. at 2882.