Melissa J. DALTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 88–1681.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 22, 1988.

Decided Dec. 7, 1988.

---

Stacy R. Obenhaus, Dallas, Tex., for appellant.

James Crowe, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Melissa Dalton brings this petition under 28 U.S.C. § 2255 to vacate her 1984 conviction for mail and wire fraud. The jury that convicted Dalton had been instructed that a scheme to deprive the citizens of St. Louis of their intangible right to the honest and loyal services of a public official could constitute "a scheme or artifice to defraud" within the meaning of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. The Supreme Court has since rejected the theory that the mail-fraud statute protects the intangible right of the citizenry to good government, and has read that statute as "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987). Dalton argues that, since the jury which convicted her was erroneously instructed in light of *McNally*, her conviction for mail and wire fraud must be vacated. The District Court[1] concluded that Dalton was not prejudiced by the erroneous instruction, and denied relief. We affirm.

## I.

Dalton and her business partner, Henry Paul Bryant, were convicted of mail and wire fraud for a series of schemes to obtain favorable treatment for their convention-booking business by bribing Emeric Martin, then the Director of the city-owned Cervantes Convention Center in St. Louis.[2] The indictment charged four separate uses of the mails and wires by Dalton and Bryant, in collusion with Martin, through which they either applied for or obtained leases for the Convention Center using false representations concerning their organization's membership and non-profit status. Indictment, No. 83–00095 CR, Counts I–II, IV–V. A fifth count charged Dalton, Bryant, and Martin with using the mails to obtain a lease under false pretenses for an Industry and Business Expo for Dalton's company in violation of city requirements that non-profit leases be issued only to non-profit organizations. Indictment Count III. The indictment also charged that, under this scheme, Martin did not collect rental monies that Dalton's company owed to the City for Convention Center leases, and directed the issuing of future leases to Dalton's company despite city policy that contracts not be issued to any entity that had an outstanding balance with the Center. Indictment, Count I, ¶¶ 11–12.

At trial, the District Court instructed the jury that

[a] scheme to deprive the citizens of the City of St. Louis of the honest and loyal services of a public official comes within the meaning of the term 'scheme or artifice to defraud' as that term is used in the mail and wire fraud statutes[,]

Instruction No. 19, and that

[t]he object of the scheme need not be money or any form of tangible property.

Instruction No. 18. The jury was also instructed that "a scheme that uses false representations to obtain contractual rights and to avoid payments of monies due to the City of St. Louis also comes within the meaning of a 'scheme or artifice to defraud' as used in the mail and wire fraud statutes." Instruction No. 19. The jury instructions were phrased in the alterna-

1. The Hon. John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

2. We affirmed these convictions on direct appeal in *United States v. Bryant*, 766 F.2d 370 (8th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

tive, so that the jury could convict if the prosecution proved "a scheme existed ... involving one or more of [the] characteristics [outlined in the instructions]...." Instruction No. 19. The jury convicted Dalton on all five counts.

## II.

The instructions which permitted the jury to convict Dalton for a scheme to defraud the citizens of St. Louis of the honest services of a municipal employee clearly misstated the law in light of *McNally, supra.* See *United States v. Slay,* 858 F.2d 1310, 1314–15 (8th Cir.1988). The question presented in this appeal is whether Dalton may obtain collateral relief from her 1984 mail and wire fraud conviction on the basis of the instructional error identified three years later in *McNally.*

■ If this case were before us on direct appeal of Dalton's conviction, the error in the jury instructions would require reversal unless the government could show that the instructional error was harmless beyond a reasonable doubt. See *id.* In particular, the government would bear the burden of proving the error harmless in respect of all possible findings of fact which could explain the jury's general verdict. See *id.* at 1315. A different standard of review applies, however, when the instructional error is raised for the first time in a collateral attack. In *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), the Supreme Court held that a federal prisoner seeking collateral relief from a conviction based on erroneous jury instructions "must clear a significantly higher hurdle than would exist on direct appeal." *Id.* at 166, 102 S.Ct. at 1593. The *Frady* court concluded that a prisoner seeking postconviction relief under § 2255 must satisfy the requirements outlined in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), by showing "both (1) 'cause' excusing his ... default, and (2) 'actual prejudice' resulting from the [trial] errors of which he complains." *Frady,* 456 U.S. at 167–68, 102 S.Ct. at 1594–95.

Dalton argues that the "cause and actual prejudice" standard in *Frady* should not apply here, where the change in law produced by the *McNally* decision could not have been foreseen at her trial three years earlier. She argues that her present § 2255 motion is, in effect, her first meaningful opportunity to challenge the validity of the jury instructions. Dalton concludes that the "plain error" standard of direct review under Fed.R.Crim.P. 52(b) should apply to her attack on the "intangible rights" theory articulated in the jury instructions at her trial. We do not agree with the approach Dalton suggests. Dalton's argument flies in the face of the clear direction of the *Frady* court:

> Because it was intended for use on direct appeal, ... the 'plain error' standard is out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal.

456 U.S. at 164, 102 S.Ct. at 1592. Like Dalton, the petitioner in *Frady* sought to challenge jury instructions on the basis of cases decided after his trial and appeal, see *id.* at 157, 102 S.Ct. at 1589. Although the legal error in Frady's jury instructions did not become apparent until years after his direct appeal, the Court nevertheless refused to treat Frady's collateral attack "... as though the clock had been turned back to 1965 when Frady's case was first before the court on direct appeal." *Id.* at 164, 102 S.Ct. at 1592. Like Frady, Dalton may not treat her collateral attack as a second direct appeal simply because new legal arguments have become available since her original appeal failed.

Dalton protests that the application of the *Frady* standard here would create an arbitrary difference in treatment between mail-fraud defendants whose appeals were decided before *McNally* and defendants (like those in *Slay, supra*) fortunate enough to have *McNally* as ammunition in their direct appeal. This "arbitrary" distinction Dalton identifies is simply the basic difference between collateral attack and di-

rect review. As the *Frady* Court explained, society has a "legitimate interest in the finality of the judgment," and a judgment becomes final after "the affirmance of the conviction on appeal." *Id.* at 164, 102 S.Ct. at 1592. Dalton's challenge to the "arbitrary" consequences of this rule is therefore really a challenge to *Frady* itself. Accordingly, we are compelled to reject her argument against the application of the normal rules of collateral review.[3]

### III.

■ Although Dalton is not entitled to a second direct appeal after *McNally*, she has not lost her chance for postconviction relief on the basis of *McNally* by procedural default. Dalton had the requisite cause under the first part of the *Frady/Wainwright* standard for failing to challenge the "intangible rights" component of the jury instructions at her trial. At the time of her conviction, every federal court of appeals to consider the issue, including our Court, had approved the "intangible rights" theory of mail-fraud prosecutions. See, e.g., *United States v. Brown*, 540 F.2d 364, 374 (8th Cir.1976); *United States v. Rabbitt*, 583 F.2d 1014, 1024–5 (8th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); see also cases compiled in *McNally*, 107 S.Ct. at 2883 n. 1 (Stevens, J., dissenting). The *McNally* decision represented precisely the kind of " 'clear break with the past, . . . overturn[ing] a longstanding and widespread practice . . . which a near-unanimous body of lower court authority has expressly approved' " which will excuse a prior failure to raise a claim. *Reed v. Ross*,

468 U.S. 1, 17, 104 S.Ct. 2901, 2911, 82 L.Ed.2d 1 (1984) (quoting *United States v. Johnson*, 457 U.S. 537, 549, 551, 102 S.Ct. 2579, 2586, 2587, 73 L.Ed.2d 202 (1982)). Under these circumstances, a petitioner for postconviction relief has cause under the *Wainwright* standard for failing to raise a claim "for which there was no reasonable basis in existing law." *Reed*, 468 U.S. at 15, 104 S.Ct. at 2910. See also *United States v. Shelton*, 848 F.2d 1485, 1490 (10th Cir.1988) (en banc).

We turn then to the second requirement of the *Frady/Wainwright* standard, under which Dalton must establish actual prejudice resulting from the instructional error she identifies. As the *Frady* court defined "actual prejudice," the petitioner

> must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

456 U.S. at 170, 102 S.Ct. at 1596 (emphasis in original). Unlike defendants on direct appeal, for whom the mere possibility of prejudice will suffice to set aside a conviction, *cf. Slay, supra*, at 1315–16. Dalton must show a substantial likelihood, based on "the total context of the events at trial[,]" that she was convicted for conduct that is not proscribed by the mail fraud statute. *Frady*, 456 U.S. at 169, 102 S.Ct. at 1595.

The record of Dalton's trial does not provide a reason to believe that the "intangible rights" instruction made any real difference in the jury's verdict. Each rele-

---

3. Dalton further cites two cases decided in other circuits for the proposition that collateral proceedings which afford claimants their first and only avenue for raising an issue should be treated under more lenient standards of review than that in *Frady*. In *United States v. Baylin*, 696 F.2d 1030, 1036 (3d Cir.1982), the Third Circuit held that a prisoner attacking the imposition of a *sentence* pursuant to a guilty plea presented a challenge analogous to a direct appeal, and that the finality concerns in *Frady* did not apply. In *Brien v. United States*, 695 F.2d 10, 13 (1st Cir. 1982), the First Circuit held that a claim of ineffective assistance of counsel based on conflict of interest could only have been presented in a postconviction motion, and therefore declined to apply *Frady*. Whether or not *Baylin* or *Brien* are good law in this Circuit, the facts of these cases are clearly distinguishable from *Frady*, while the facts of Dalton's are not. *Baylin* and *Brien* dealt with claimants whose access to direct review had been impaired, either by the nature of sentencing proceedings or by ineffective assistance of trial counsel. Dalton, by contrast, has received extensive direct review, see *Bryant, supra*. The only new development is that the law has changed since Dalton's conviction, and in this respect she is now in precisely the same position as the petitioner in *Frady*.

vant count of the indictment charged Dalton with schemes to deprive the City of St. Louis of rental monies and of its control over valuable contract rights for key dates at its convention center. Dalton's defense at trial did not dispute that the property rights of the City were implicated, but argued instead that Dalton had either been coerced, or had participated in good faith, in the fraudulent bidding scheme. Dalton does not now allege that her indictment failed to state an offense under *McNally*. Nor does she suggest a plausible interpretation of the evidence at trial under which the jury might have convicted on an "intangible rights" theory without finding a scheme to obtain property. The testimony presented at trial leaves no doubt that the jury convicted Dalton for a scheme to deprive the City of money and property. *Compare United States v. Lance*, 848 F.2d 1497, 1499–1501 (10th Cir.1988) (en banc), *with id.* at 1501–2, and *Shelton, supra.* As a result, we cannot find the presence of any actual prejudice from the erroneous jury instruction which would entitle Dalton to relief under § 2255.

The judgment of the District Court is Affirmed.