Barry L. BATEMAN,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 88–1820.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1989.
Decided May 24, 1989.

Nelson P. Skinner, Law Offices of Acevedo & Leal, San Antonio, Tex., for petitioner-appellant.

Laura J. Jones, Asst. U.S. Atty., East St. Louis, Ill., for respondent-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

Barry L. Bateman filed this motion pursuant to 28 U.S.C. § 2255, seeking relief from his convictions for conspiracy to commit mail fraud, mail fraud and interstate transportation of stolen property in violation of 18 U.S.C. §§ 371, 1341, 2314. Bateman argues that his conviction should be set aside in light of *McNally v. United*

*States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The district court disagreed and dismissed Bateman's motion to vacate. We affirm.

## I. Facts and Proceedings Below

Bateman, along with co-defendant Edward Massey, was indicted on May 20, 1983, for defrauding his employer, Southern Illinois University. The indictment alleged that Bateman and Massey, employed by the University respectively as the Executive Director of Computing Affairs and the Assistant Director of Computing Affairs, formed a series of shell corporations unbeknown to the University in order to buy computer equipment. They then utilized their positions at the University to cause the University to purchase or lease computer equipment from their corporations at greatly inflated prices by essentially rigging the bidding process for which they had considerable responsibility.

Bateman was charged in three counts. Count One charged him with conspiring to commit mail fraud, alleging that his scheme intended to deprive the University of his good and honest services as an employee, in typical pre-*McNally* fashion. The other two counts against Bateman related to the first and alleged mail fraud (mailing a certain University contract to a bank) and interstate transportation of stolen property (three checks obtained by fraud). Bateman pleaded guilty to all three counts on June 13, 1983, and was sentenced on September 28, 1983.[1] He did not file a direct appeal.

On January 5, 1988, Bateman filed the present motion to vacate judgment pursuant to 28 U.S.C. § 2255, predicated on the Supreme Court's decision in *McNally*. He argues that the court which entered his conviction did not have subject matter jurisdiction because the property interest underlying the fraudulent activity alleged in the indictment to which he pleaded guilty was intangible in nature, namely, his good and honest services as an employee, which

---

1. He was committed to three concurrent years in prison for Counts 3 and 4, given five years probation thereafter on Count 1 and ordered to make restitution of $472,668 to the University.

the Supreme Court has determined is not the type of property interest protected by the federal mail fraud statute. He apparently also contends that his conspiracy to commit mail fraud and the interstate transportation of stolen property convictions are dependent upon the mail fraud conviction and cannot stand.

## II. Analysis

### A. Impact of *McNally* on Mail Fraud

In *McNally*, the Supreme Court construed Section 1341 of the Criminal Code, the federal mail fraud statute, as requiring that the fraud with which a defendant has been charged must have been intended to deprive the victim of money or tangible property. For a conviction to be sustained, the defendant must be shown to have intended to deprive the victim of something other than so-called "intangible" rights.[2] And this Court has held that *McNally* applies retroactively to a collateral attack on a conviction. *Magnuson v. United States*, 861 F.2d 166 (7th Cir.1988).

■ While an indictment which is premised exclusively upon an intangible rights theory of fraud dictates reversal under *McNally* (*e.g., Magnuson v. United States*, 861 F.2d 166 (7th Cir.1988); *United States v. Holzer*, 840 F.2d 1343 (7th Cir. 1988), certiorari denied, —— U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608) (1988), the mere inclusion of intangible rights language in an indictment will not mandate

relief from conviction. Rather, the presence of some language referring to an intangible rights theory will not be fatal to an indictment in which multiple claims are alleged and the intangible rights language is limited in its application, or when the intangible rights language is easily separable from allegations of a scheme to defraud someone of tangible property. Even when a single set of facts establishes both a scheme to defraud a victim of tangible property as well as a deprivation of some intangible right, *McNally* does not require setting aside the conviction. *United States v. Wellman*, 830 F.2d 1453, 1462–1463 (7th Cir.1987). A court will look beyond the mere form of the indictment to its substance to determine whether it fairly alleges a scheme involving tangible property. Under *McNally*, an indictment alleges a violation of the federal mail fraud statute if it charges a defendant with conduct that would ordinarily result in some kind of concrete economic harm to the victim. *Wellman*, 830 F.2d at 1462.

■ Bateman now argues that because the indictment alleged a "scheme and artifice to defraud ... [his employer] ... of [his] good and honest services as [an employee]," *McNally* requires that his conviction be vacated. Section 2255 affords relief on only certain enumerated grounds to a prisoner collaterally attacking his sentence, and despite his protestations to the contrary, Bateman's challenge is not of a constitutional or jurisdictional nature,[3] and the

2. "Intangible" is somewhat of a misleading label, as pointed out in *United States v. Gill*, 673 F.Supp. 275, 281 n. 8 (N.D.Ill.1987), since most frauds have as their targets money, which is essentially an intangible interest. The Supreme Court addressed this issue in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). Although the Court refused to sustain the conviction on the basis that the employer had been defrauded of the defendant's honest and faithful services, which was "an interest too ethereal in itself to fall within the protection of the mail fraud statute," the Court nonetheless affirmed the conviction without requiring that the employer first demonstrate a money loss. See 108 S.Ct. at 320–322. Instead, the Court affirmed the conviction of the defendant on the basis that his scheme deprived his employer of its right to the exclusive use of valuable information, arguably property of an intangible na-

ture. For the sake of consistency and ease of labelling, we continue to refer to the intangible rights theory with this caveat still in mind and will refer to tangible property or money interchangeably.

3. Batemen argues that after the decision in *McNally*, the district court which entered his conviction and sentence was without subject matter jurisdiction to do so. This is incorrect. Despite whatever impact *McNally* may have on this case, a district court is not divested of jurisdiction it clearly had at the time of conviction to entertain a federal prosecution of an individual accused of a federal crime. See *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir.1985); but see also *United States v. Mitchell*, 867 F.2d 1232, 1233 n. 2 (9th Cir.1989) (per curiam).

question of guilt or innocence is not cognizable on a Section 2255 motion. *United States v. Angelos,* 763 F.2d 859, 861 (7th Cir.1985). But relief will be afforded to a prisoner who is able to show, as Bateman now claims, that he was convicted of a federal crime and sentenced thereon based upon conduct which under no possible view amounts to a violation of federal law, under the Section 2255 rubric permitting motions to vacate sentences "otherwise open to collateral attack." *Ibid.*

■ After pleading guilty, Bateman failed to appeal; consequently, this is the first time Bateman has made a *McNally* argument. An issue not preserved by direct appeal generally is not freely cognizable on collateral attack. A judgment entered on a plea of guilty is an appealable order, albeit the grounds for appeal are considerably more limited than if the defendant had contested the charges at trial. *Angelos,* 763 F.2d at 860; see also *Williams v. United States,* 805 F.2d 1301, 1306 (7th Cir.1986), certiorari denied, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987) ("we reject the notion that when a defendant pleads guilty his first appeal, for all practical purposes, is a section 2255 proceeding"). As a consequence, this Section 2255 motion, a collateral attack based on an issue not previously challenged, is properly reviewed under the cause and prejudice standard of *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); see *Williams,* 805 F.2d at 1306; *Angelos,* 763 F.2d at 861.[4]

### B. Cause

In *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1, (1984), the Supreme Court, while acknowledging that no precise definition had ever been articulated for "cause"—and expressly refusing to do so—offered contrasting prototypical instances which underlay the principles behind the cause requirement. A defendant is typically bound by his competent counsel's decision to forego a trial objection or direct appeal, and cannot, after that strategy has proved unsuccessful, later pursue the issue on collateral review. To review a collateral claim following a procedural default, which resulted from an intentional decision of counsel advancing the interests of his client, would subvert many of the policies underlying contemporaneous objection rules and procedural default. 468 U.S. at 13–14, 104 S.Ct. at 2909.

Standing in contrast to an intentional procedural default is the situation in which after conviction an intervening change in the law is announced. 468 U.S. at 13–14, 104 S.Ct. at 2909, citing, among other Circuit cases, this Court's decision in *Norris v. United States,* 687 F.2d 899, 903 (7th Cir. 1982). The failure of defendant's counsel to raise a claim for which there was no reasonable basis at the time is rightly a ground for good cause excusing procedural default.[5] Drawing on *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Court identified three instances in which a new rule, having retroactive effect, might be such a "clear break with the past" to justify cause for an earlier default by counsel. First, the Supreme Court may explicitly overrule a precedent of its own. Second, a decision may overturn a longstanding and widespread practice on which the Court had not yet spoken, but which was routinely applied by a nearly unanimous body of lower courts. Third, the Court could disapprove a practice which had arguably been sanc-

---

**4.** Alternatively, in extreme instances in which a defendant claims that he stands convicted based upon conduct in no way criminal, even though the defendant may not be able to show good cause for his procedural default, an appellate court may nonetheless excuse that prong of the standard and proceed directly to the merits of his claim. While, "for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard' ... 'in appropriate cases' ... the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (citations omitted).

**5.** Although the Court in *Reed* was immediately concerned with defendant's failure to raise a constitutional claim, the same rationale is imputable to the argued situation here, *viz.,* that the defendant formerly had no reasonable basis to raise a claim based upon statutory interpretation.

tioned by the Court in the past. "By definition, when the case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a ... court to adopt the position that [the Supreme] Court has ultimately adopted." 468 U.S. at 17, 104 S.Ct. at 2911.

The claim before us represents a scenario from the second category as explained in *Reed*. Prior to *McNally*, nearly every court to have considered the matter of intangible rights as it relates to mail fraud validated the theory. See *McNally*, 107 S.Ct. at 2883–2885 and n. 3 and n. 5 (Stevens, J., dissenting). Indeed, the doctrine had its origins in this very Court. See, *e.g.*, *United States v. Isaacs*, 493 F.2d 1124, 1149–1150 (7th Cir.1974), certiorari denied, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974). Consequently, the decision in *McNally* has been "variously described as 'blockbusting,' as 'a total surprise' and as 'a total explication of the law of mail fraud....' [*McNally*] was, without a doubt, a departure from the law of every court of appeals ... to consider the issue of intangible rights mail fraud prosecutions." *United States v. Ochs*, 842 F.2d 515, 521 (1st Cir.1988) (citations omitted).

■ The specific issue of whether the *McNally* decision is a proper basis for excluding procedural default has been addressed by two courts of appeals, both of which decided that *McNally* did indeed represent the type of startling break with past practices so as to excuse procedural default on collateral attack of a conviction. *United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988) (en banc); *Dalton v. United States*, 862 F.2d 1307 (8th Cir.1988). In the context of this case, prior to *McNally* every court of appeals to address the intangible rights theory had endorsed it, and the Supreme Court had yet to intimate otherwise. Consequently, as in *Shelton* and *Dalton*, there was good cause for Bateman's failure to challenge the intangible rights theory on direct review.

## C. Prejudice

Although Bateman's default is excusable, his challenge must fail because of the clear absence of prejudice. Count One charged Bateman with conspiracy to commit mail fraud. That count detailed the scheme, alleging that he and his co-defendant Massey secretly set up shell companies and fraudulently caused Southern Illinois University to purchase computer equipment from their companies at grossly inflated prices. Also included in the same count is an introductory statement that the scheme defrauded Southern Illinois University of its right to the good and honest services of an employee. The count then listed five overt acts of the conspiracy, those specific actions which comprised the elements for the conspiracy charge. Bateman argues that his guilty plea is not necessarily an admission of each and every listed overt act, but he ignores that he pleaded guilty to the scheme outlined in twelve subsequent paragraphs devoid of any reference to intangible rights (App. 7–10). According to Bateman, his guilty plea is only an admission to the part of the charge that concerns the loss of intangible rights.

■ After *McNally* and *Carpenter* this Court has upheld a number of convictions originally obtained at least in part under the intangible rights theory. Thus in *Wellman* the defendant was charged with defrauding his victim of its "right to have safe and authorized equipment for the storage and shipment of hazardous chemicals," and secondly with obtaining money "by means of false and fraudulent pretenses." 830 F.2d at 1463. Despite the indictment's duality, this Court upheld the conviction because both parts concerned identical conduct comprising a single scheme. *Ibid.* "The legal characterization the indictment places on the scheme should not obscure the fact that the specific conduct alleged in the indictment is clearly proscribed by the mail fraud statute." *Id.* at 1462. See also *United States v. Bonansinga*, 855 F.2d 476 (7th Cir.1988); *United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988), certiorari denied, —— U.S. ——, 109 S.Ct. 796, 102 L.Ed.

2d 787 (1989); *United States v. Folak*, 865 F.2d 110 (7th Cir.1988); *Moore v. United States*, 865 F.2d 149 (7th Cir.1989).[6]

▉ Although the aforementioned cases involved jury trials, the same reasoning applies to a conviction based upon a plea of guilty. The effect of a guilty plea is well established; it is an admission of all the formal elements of a criminal charge. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). By pleading guilty, Bateman admitted the factual allegations which form the predicate for the criminal charge in the indictment. The indictment at issue here alleged a single scheme. While one sentence in Count One referred to a deprivation of the University's right to the good and honest services of an employee, the count nonetheless detailed a single scheme the purpose of which was to obtain money through fraudulent means. Even excluding the listed overt acts in their entirety, Count One details a scheme in which Bateman is accused of causing Southern Illinois University to purchase equipment from his shell companies for up to twice what they covertly had paid for the same equipment. Bateman pleaded guilty to this scheme to defraud Southern Illinois University of money through the inflated priced sale of computer equipment. The deprivation is easily quantifiable; it is the amount the University was overcharged for the equipment, which of course is the same as the profit from the scheme. This is not a case in which the deprivation was an "evanescent concept lacking a money or property consequence," *United States v. Ginsburg*, 705 F.Supp. 1310 (N.D.Ill.1989), or "an interest too ethereal in itself to fall within the protection of mail fraud," *Carpenter*, 108 S.Ct. at 320.

The scheme as alleged in the indictment differs from the situation in *McNally*, in which the defendants did not deprive the State of Kentucky, the alleged victim, of a property interest. Rather, in *McNally* the defendants steered the State to purchase insurance policies from companies in which they had an interest. Although the defendants violated state laws with respect to reporting interested transactions and profited from the deals, there was no evidence to suggest that the State paid more for the policies or received inferior coverage than if it had purchased insurance from other carriers. The indictment here, however, alleges that Bateman's profit was derived from inflating the sale or lease price of computer equipment. In sum, unlike *McNally*, the indictment alleges that Bateman's scheme caused the Southern Illinois University to pay substantially more for equipment than it would have if Bateman had not engaged in this scheme. Indeed Count One spells out the large sums of money defendants obtained through their fraud. In view of the fulsome terms of the indictment it is frivolous to describe this as an intangible rights case.

### III. Conclusion

Since a guilty plea is an appealable order, failure to appeal a conviction resulting from a guilty plea ordinarily subjects the defendant to the cause and prejudice standard announced in *Frady* for collateral attack on the conviction. *Frady* requires that the defendant show cause for his procedural default. Because of the startling effect of the *McNally* decision, which deviated from the decisions of nearly every other court of appeals, a failure to object to an intangible rights theory of prosecution for mail fraud prior to *McNally* is good

---

**6.** When the indictment alleges two distinct schemes, one under the intangible rights theory and the other alleging a distinct property deprivation, a reviewing court will look to the indictment to determine whether the charges under the intangible rights theory are "easily separable" from those portions alleging a property deprivation. *United States v. Cosentino*, 869 F.2d 301, 306 n. 4 (7th Cir.1989), citing *United States v. Eckhardt*, 843 F.2d 989, 997 (7th Cir.

1988). When the intangible rights scheme is easily separable from the remainder of the indictment, it may be treated as surplusage as long as the rest of the indictment charges an offense. *Eckhardt*, 843 F.2d at 997. In the case before us *Wellman* controls because the indictment, while it complains of two deprivations, intangible and property interests, alleges but a single scheme.

cause sufficient to overcome the first prong of the *Frady* analysis.

Despite good cause being shown, Bateman's petition must be denied because of the absence of any prejudice. Although the indictment did contain one sentence referring to intangible rights, the conduct alleged in the indictment was a garden variety of fraud resulting in a deprivation of money and clearly proscribed by the mail fraud statute. The detailed scheme to which Bateman pleaded guilty clearly did not contravene *McNally*.

The decision of the district court is affirmed.