**UNITED STATES of America, Plaintiff,**

v.

**Newman Lee WILEY, Defendant.**

Crim. File No. 3–93–67.
Civ. File No. 3–95–1177.

United States District Court,
D. Minnesota,
Third Division.

April 10, 1996.

---

Newman Lee Wiley, Sandstone, MN, pro se.

Denise Reilly, U.S. Atty. Office, Minneapolis, MN, for the U.S.

### MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Newman Lee Wiley's Petition for Habeas Corpus Relief pursuant to 28 U.S.C. § 2255. Wiley argues that the Supreme Court's recent decision, *Bailey v. United States*, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), requires the Court to vacate his conviction of violating 18 U.S.C. § 924(c)(1). After considering the arguments of the parties and the full record, the Court denies Wiley's Petition for the following reasons.

### BACKGROUND

In March 1993 Minneapolis police officers witnessed a driver fail to stop his vehicle at a posted stop sign. Wiley was the driver. After the officers signalled a traffic stop, Wiley continued for some distance before stopping. During this time the officers witnessed Wiley moving suspiciously within the vehicle. After the car stopped, the officers pat searched Wiley for weapons and found an empty gun holster on his person. The officers arrested Wiley after he failed to produce a driver's license, and searched him and his car incident to the arrest. On Wiley's person officers also found an electronic scale, $764 cash mostly in $20 bills, and a pager. Inside the car officers found a bag of cocaine base, or "crack," between the two bucket seats, and a .22 caliber revolver concealed behind the dashboard clock. The hidden handgun fit Wiley's empty holster.

At trial Wiley admitted he possessed the .22 caliber revolver and that he had hidden it behind the clock. The jury found Wiley guilty of possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and of using or carrying a firearm during and in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1). Wiley appealed and the Eighth Circuit Court of Appeals affirmed his conviction. *United States v. Wiley*, 29 F.3d 345 (8th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994). Wiley subsequently brought a § 2255 motion, which this Court denied. Wiley appealed again to the Eighth Circuit, and again the Eighth Circuit affirmed this Court's decision. Wiley brings the present petition in light of *Bailey*, challenging his conviction of use of a firearm in connection with drug trafficking under § 924(c)(1).

### DISCUSSION

#### I. "Use" after Bailey

Wiley argues that the Supreme Court's recent decision in *Bailey, supra*, requires this Court to vacate his conviction of use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Title 18, section 924(c)(1) in relevant part states:

Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years.

Before *Bailey,* the prevailing understanding of a drug dealer "using" a firearm under § 924(c)(1) included simply his possessing a firearm, since that possession would tend to embolden or potentially protect him, even if he did not display or refer to the firearm. *See, e.g., United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2nd Cir.1988) (holding that one "uses" a firearm under § 924(c)(1) if he has placed it so as to be readily available during the illegal transaction); *United States v. Theodoropoulos,* 866 F.2d 587, 597 (3rd Cir.1989) (adopting *Feliz–Cordero* standard); *United States v. Brockington,* 849 F.2d 872 (4th Cir.1991) ("[I]t is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used."); *United States v. Contreras,* 950 F.2d 232, 241 (5th Cir.1991) ("[I]f the evidence shows that the 'firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others', the defendant 'used' the firearm regardless of whether such display or discharge occurred.") (citation omitted), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992). *United States v. Torres–Medina,* 935 F.2d 1047, 1050 (9th Cir.1991) ("A firearm may play a role in the offense simply by emboldening the defendant to act; the defendant need not have drawn his weapon or fired rounds."). The Eighth Circuit followed this broad interpretation of "use" under § 924(c)(1). *See United States v. LaGuardia,* 774 F.2d 317, 320 (8th Cir.1985) ("The presence and availability [of a firearm] in light of the evident need demonstrates the use of the firearm to commit the felony.").

■ The Supreme Court in *Bailey,* however, more narrowly defined "use" under § 924(c)(1). The unanimous Court held that for a defendant to have "used" a firearm, he must have "actively employed the firearm during and in relation to the predicate crime." —— U.S. at ——, 116 S.Ct. at 509. The *Bailey* Court considered the consolidated appeal of two defendants. In one case, police had stopped the defendant for a minor traffic offense. When the defendant exited the car, officers saw him push something between the seat and the front console. A search of the passenger compartment produced 27 bags of cocaine and a single round of ammunition. A search of the trunk revealed a large amount of cash and a bag containing a loaded 9–mm pistol. The defendant was charged with and convicted of using and carrying a firearm in violation of § 924(c)(1).

The second case considered in *Bailey* involved a defendant from whom an undercover officer had made two controlled drug purchases. Execution of a subsequent search warrant revealed a locked trunk in the defendant's bedroom closet. Inside the trunk officers found an unloaded .22–caliber Derringer, crack cocaine, and a marked $20 bill from one of the controlled purchases. This defendant was also charged with and convicted of using and carrying a firearm in violation of § 924(c)(1).

On review of the convictions of both defendants, the *Bailey* Court reasoned that had Congress intended "use" under § 924(c)(1) to include mere firearm possession, it easily could have written "possesses" instead of "uses" into the statute. The Court then rejected the proximity and accessibility standard, as such a standard would inculpate almost every possession of a firearm. From this, the Court held that the government "must show active employment of the firearm" to sustain a conviction, and remanded the cases for further consideration. —— U.S. at ——, 116 S.Ct. at 506.

■ Applying *Bailey's* "use" standard here, the Court agrees the facts do not support conviction of violating § 924(c)(1). However, this conclusion does not end the inquiry.

## II. "Carry" after Bailey

■ The government argues that, notwithstanding *Bailey's* definition of "use," Wiley's conduct nevertheless satisfies the "carry" prong of § 924(c)(1). In his "Rebuttal," Wiley initially conceded that his conduct would satisfy the "carry" prong of § 924(c)(1). Wiley's appointed counsel, however, has since submitted a Supplemental Memorandum in which he suggests Wiley's action might not constitute "carry" under § 924(c)(1). Addi-

tionally, he argues that the conviction cannot stand because the jury was instructed under the flawed precedent that it could convict Wiley merely upon finding he "possessed" the firearm.

Wiley's Supplemental Memorandum overlooks the fact that *Bailey* did not address the "carry" prong. Indeed, the *Bailey* decision concluded as follows:

> The police stopped Bailey for a traffic offense and arrested him after finding cocaine in the driver's compartment of his car. The police then found a firearm inside a bag in the locked car trunk.... In Robinson's case, the unloaded, holstered firearm ... was found in a footlocker in a bedroom closet.
>
> .... Because the Court of Appeals did not consider liability under the "carry" prong of § 924(c)(1) for Bailey or Robinson, we remand for consideration of that basis for upholding the convictions.

—— U.S. at ——, 116 S.Ct. at 509. Yet Wiley argues case law and the plain meaning of "carry" support his latter position that he did not "carry" a firearm under § 924(c)(1). The Court disagrees with Wiley's implied premise that one does not "carry" a gun in his car unless he also has the gun actually on his person. Case law both before and after *Bailey* bears this out.

Before *Bailey*, the Tenth Circuit considered what constitutes "carry" in *United States v. Cardenas*, 864 F.2d 1528 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). The Court there determined that the legal definition of "carry" at the time § 924(c)(1) was enacted in 1968 included transporting a firearm in a vehicle. The Tenth Circuit then concluded that "when a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than the defendant's hands or pocket...." 864 F.2d at 1535. Two years later the Eighth Circuit considered the same question in *United States v. Freisinger*, 937 F.2d 383 (8th Cir. 1991). The Eighth Circuit there first noted that the "common usage of 'carries' include[s] 'carries in a vehicle.' 937 F.2d at 387. The

*Freisinger* Court then expressly adopted and followed *Cardenas*. *Id.*

Since *Bailey*, recognizing that the Supreme Court did not intend to affect the "carry" prong of § 924(c)(1), courts addressing the issue uniformly have continued to hold that where the defendant has a firearm accessible to him within the passenger compartment of a vehicle he is "carrying" the firearm within the meaning of the statute. *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.1996) (holding defendant "carries" a firearm in his vehicle where the firearm is immediately available to the defendant by being either "on the defendant or within his or her reach"); *United States v. Farris*, 77 F.3d 391 (11th Cir.1996) (relying in part on *Freisinger* and *Cardenas* and holding that evidence that a back-seat passenger planned to sell the drugs which were later found in the vehicle was sufficient to support a finding that the passenger "carried" the firearm under § 924(c)(1) where the passenger knew that the firearm was in the glove compartment); *United States v. Moore*, 76 F.3d 111, n. 1 (6th Cir.1996) ("The dictionary definition of 'carry' incorporates the idea of physical transportation: '1: to move while supporting (as in a vehicle or in one's hands or arms).'" (quoting Webster's Third New International Dictionary 343 (1986))); *see also United States v. Flores*, Crim. A. No. 89–220, 1996 WL 32505 (E.D.La. Jan. 26, 1996).

Notwithstanding this case law, Wiley's appointed counsel, in an attempt to distinguish "transport" from "carry," argues that the Court should consider and apply the dictionary definition of "carry." In support, he contends "Black's Law Dictionary defines 'to carry' as 'to have or bear upon or about one's person.'" Pet'r. Supplemental. Mem.Supp. at 4 (purportedly quoting Black's Law Dictionary 214 (6th ed. 1990)). Wiley's counsel, however, in quoting *the second* sentence of the dictionary definition, has chosen—apparently intentionally—to omit *the first:* "To bear, bear about, sustain, *transport*, remove, or convey." Black's Law Dictionary 214 (6th ed. 1990) (emphasis added). Following counsel's lead to consider the dictionary definition, but choosing to be less selective, the

Court finds further support for its conclusion that where a defendant has a firearm accessible to him within the passenger compartment of a vehicle he is "carrying" the firearm within the meaning of § 924(c)(1).

Additionally, taken to its logical end, Wiley's new position would certainly be applauded by dangerous, but shrewd narcotics dealers who use their cars to transport or distribute drugs. That is, while driving, instead of placing a weapon in a shoulder holster or in a pocket, an armed dealer could avoid prosecution under the "carry" prong of § 924(c)(1) altogether, yet remain equally threatening to others, simply by slipping the gun under the front seat his or her car—or as Mr. Wiley admittedly did, by concealing it behind the dashboard clock to avoid police detection. The Court concludes that this result would be within neither the spirit nor letter of § 924(c)(1). Indeed, armed drug dealers could avoid conviction by placing their weapons beside them on the passenger seat, under their leg, or in their glove compartment. But by positioning a gun for ready accessibility in the vehicle, the driving drug dealer is "carrying" his weapon in the same sense that a walking drug dealer may "carry" a gun in her backpack or a biking drug dealer may "carry" a gun in his basket; accompanying the drug dealer everywhere he or she travels are the weapon and the drugs. Nothing in the reasoning of *Bailey*, the apparent purpose of § 924(c)(1), the generally accepted meaning of the term "carry," or the case law before or after *Bailey* permits the Court to construe the "carry" prong of § 924(c)(1) in the fashion sought by Mr. Wiley.

### III. Jury Instructions

■ Wiley also argues that because the jury was improperly instructed, his conviction must be set aside. When instructing the jury in this matter, this Court provided the relevant language of the statute, thus advising the jury to convict only upon proof that Wiley committed a drug trafficking crime and that he "used or carried a firearm" during and in relation to the drug trafficking crime. Jury Instruction Nos. 16, 17. But in accord with the extant interpretation of

§ 924(c)(1), the Court further instructed as follows:

> The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time a drug trafficking crime was committed.

Jury Instruction No. 17. The Court had instructed the jury that "possession" included actual possession or constructive possession, as well as sole or joint possession. Jury Instruction No. 14.

■ Because *Bailey* has clarified that a defendant may not be convicted of firearm "use" on such possession alone, the Court's instruction was in error as it relates to the "use" prong of § 924(c)(1). Ordinarily, on direct appeal, appellate courts would consider whether the error was a "harmless error." If the legal breach constitutes a non-constitutional error, it is harmless if no substantial rights of the defendant were affected and the error did not influence or had only a very slight influence on the verdict. *United States v. Flenoid*, 949 F.2d 970, 973 (8th Cir.1991). On the other hand, if the error does constitute a constitutional error, the error can be held harmless only if a reviewing court is able to declare a belief that the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); *United States v. Slay*, 858 F.2d 1310, 1315 (8th Cir.1988); *Jones v. Wyrick*, 542 F.2d 1013, 1015 (8th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807 (1977). The latter analysis would require answering whether there is a reasonable possibility that the error complained of might have contributed to the conviction. *DeVine v. Solem*, 815 F.2d 1205, 1208 (8th Cir.1987).

■ However, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982) (quoting *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979)). Where a jury instruc-

tion is attacked as erroneous for the first time collaterally, the prisoner "must clear a significantly higher hurdle than would exist on direct appeal." *Dalton v. United States,* 862 F.2d 1307, 1309 (8th Cir.1988) (quoting *Frady,* 456 U.S. at 166, 102 S.Ct. at 1593). This is true even where, as here, an unforeseen intervening decision subsequently creates a change in the law that forms the basis for recognizing the instruction as erroneous. *Dalton,* 862 F.2d at 1309. In such cases the instructions will not be scrutinized "as though the clock had been turned back" to when the case was ripe for direct appeal, *id.,* but the claimant instead must demonstrate both cause excusing the default and actual prejudice resulting from the erroneous instruction. *Frady,* 456 U.S. at 167–68, 102 S.Ct. at 1594–95; *Dalton,* 862 F.2d at 1309.

█ Of course, where the intervening decision represents a clear break with the prior universally accepted interpretation of the law, a petitioner has cause for failing to raise the claim at trial or on direct appeal. *See Reed v. Ross,* 468 U.S. 1, 15, 104 S.Ct. 2901, 2909–10, 82 L.Ed.2d 1 (1984); *Dalton,* 862 F.2d at 1310. Therefore here, because *Bailey* represents such a clear break with precedent regarding the definition of "use" under § 924(c)(1), Wiley had cause for failing to raise the claim earlier.

█ Wiley has not, however, demonstrated actual prejudice. To demonstrate actual prejudice, Wiley must show that the erroneous jury instruction worked to his actual and substantial disadvantage, thus infecting the trial with error of constitutional dimensions. *Frady,* 456 U.S. at 170, 102 S.Ct. at 1595–96; *Jennings v. Purkett,* 7 F.3d 779, 782 (8th Cir.1993). As noted above, Wiley admitted at trial that he had concealed the firearm in the dashboard of his car. The jury convicted him of the underlying drug trafficking offense. He also here first conceded that his conduct would satisfy the "carry" prong of § 924(c)(1), and in his Supplemental Memorandum his appointed counsel acknowledges that a reasonable jury could conclude Wiley "carried" the firearm even under appointed counsel's inaccurately restrictive interpretation of "carrying" a firearm. Because the facts at trial unequivocally

established that Wiley concealed and transported his readily accessible firearm in the passenger compartment of his car while committing the underlying drug trafficking offense, Wiley was not prejudiced by the jury instruction that improperly construed "use" under § 924(c)(1); the jury could draw no other reasonable conclusion but that Wiley "carried" the firearm in violation of the statute.

## IV. Infirm Indictment

Wiley argues also that he was indicted only for "using" a firearm, but not for "carrying" a firearm, and therefore he was illegally convicted. Wiley's Supplemental Memorandum does not withdraw the argument. In support of his position, Wiley cites *United States v. Payne,* 940 F.2d 286 (8th Cir.1991), as having stated:

> Every material fact and essential ingredient of the offense, every essential element of the offense, must be alleged with precision and certainty, or as has been stated, every fact [must be stated] in the indictment.

Def.'s Rebuttal at 1. He then purportedly provides a quotation from his Indictment:

> On or about March 25, 1993, in the state and District of Minnesota [sic] the defendant NEWMAN LEE WILEY, did Knowingly [sic] and intentionally posses [sic] with intent to distribute approximately 60.1 grams of a substance or mixture containing a detectable amount of cocaine, a controlled substance. In [sic] violation of Title 21 United States code, section 841.(A)(1) [sic] and (b)(1)(a) And Use [sic] of a firearm during and in relation to a drug Trafficking crime, in violation of 18 § U.S.C. 924(c)(1) (suppIV 1992) [sic].

Def.'s Rebuttal at 2.

Any initial allure of Wiley's argument evaporates instantly upon minimal investigation. First, the Eighth Circuit in *Payne* did *not* provide the quote Wiley ascribes to it. In fact, this Court finds no Eighth Circuit decision having that language. What is more, this Court searches but finds no federal court decision at *any level, anywhere,* which includes this language. Indeed, it

seems only decisions of Mississippi state courts, along with one decision each from a North Dakota state court and a New York state court have included the quote Wiley falsely attributes to the Eighth Circuit. This revelation would not itself render the substance of Wiley's argument meritless. However, the next revelation is both fatal and more egregious. Contrary to Mr. Wiley's misrepresentation, in relevant part the Indictment reads as follows:

> On or about March 25, 1993, in the State and District of Minnesota, the defendant, NEWMAN LEE WILEY did knowingly and unlawfully use **and carry** a firearm, namely a .22 caliber revolver, during and in relation to the drug trafficking crime set forth in Count I of this indictment, a felony subject to prosecution in a court of the United States, all in violation of Title 18, United States Code, Section 924(c)(1).

Indictment Count II (emphasis added).

Because the Indictment did in fact charge Wiley with "use and carry,"[1] Wiley's argument has no basis in fact, and the Court therefore will consider the argument no further.

 Rule 12 of the Rules Governing Section 2255 Proceedings directs courts to apply the Federal Rules of Civil Procedure to § 2255 motions if no procedure is specifically prescribed by the § 2255 Rules. Rule 11 of the Federal Rules of Civil Procedure permits a court to sanction an attorney or an unrepresented party who proffers in a filed motion or other paper any unwarranted legal contentions or insupportable factual assertions. Fed.R.Civ.P. 11(b). Mr. Wiley's misrepresentations in his *pro se* submissions, particularly his gross misrepresentation of the Indictment's language, seems to constitute behavior so inappropriate as to warrant sanctioning. Sanctions may consist of a penalty paid to the Court, but such a monetary sanction may not be ordered unless the Court first issues an order to show cause. *Id.*

## CONCLUSION

While Wiley may not have "used" a firearm within the meaning of § 924(c)(1) after *Bailey*, the Court holds that his conduct either admitted to or proven at trial requires a finding that he "carried" a firearm under § 924(c)(1). Wiley was properly convicted of using or carrying a firearm pursuant to an Indictment that alleged Wiley did "use and carry" a firearm in relation to drug trafficking. Wiley has misrepresented the facts here by utterly misquoting the Eighth Circuit in support of his legal theory. Worse, he has purported to quote the Indictment but has instead grossly altered it to support his argument. The Court must provide Wiley an opportunity to establish why he should not be sanctioned for his misrepresentations to this Court.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Newman Lee Wiley's Petition for Habeas Corpus Relief is DENIED and DISMISSED; and

2. Newman Lee Wiley shall, within 20 days, file with the Clerk of Court a memorandum showing cause as to why this Court should not impose a sanction for Wiley's apparent violation of Fed.R.Civ.P. 11.

---

**1.** That the Indictment charged in the conjunctive rather than disjunctive is not relevant. Section 924(c)(1) prohibits either using "or" carrying a firearm in relation to drug trafficking. Federal criminal pleading rules require pleading in the conjunctive while permitting proof in the disjunctive. *United States v. Hicks,* 619 F.2d 752, 758 (8th Cir.1980). In other words, while § 924(c)(1) prohibits using *or* carrying a firearm, the indictment must charge "using *and* carrying" a firearm, but the government may convict if the defendant either used or carried the firearm in violation of the statute. *See United States v. Pate,* 932 F.2d 736, 737 n. 2 (8th Cir.1991).