Kevin BEAL, Petitioner,

v.

UNITED STATES of America, Respondent.

Criminal No. 4–90–6(1), Civil No. 4–95–1.

United States District Court, D. Minnesota, Fourth Division.

April 26, 1996.

914

Daniel M. Scott, Federal Public Defender and Andrea K. George, Assistant Public Defender, Minneapolis, MN, for petitioner.

David L. Lillehaug, United States Attorney and Denise Reilly, Assistant United States Attorney, Minneapolis, MN, for respondent.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of petitioner Kevin Beal to vacate his conviction pursuant to 28 U.S.C. § 2255. For the reasons stated, the motion is granted with respect to petitioner's conviction under 18 U.S.C. § 924(c)(1), and is in all other respects denied.

## BACKGROUND

After a jury trial in May 1990, petitioner was convicted on five counts: conspiracy to distribute five or more kilograms of cocaine, 21 U.S.C. § 846; maintaining a place for the purpose of storing drugs, 21 U.S.C. § 856(a)(1); possession of a firearm by a felon, 18 U.S.C. § 922(g)(1); possession of an unregistered firearm, 26 U.S.C. § 5861; and use of a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1).

After an unsuccessful appeal of these convictions, *U.S. v. Beal*, 940 F.2d 1159 (8th Cir.1991), petitioner seeks collateral relief. He alleges that his conviction under § 924(c)(1) is unlawful in light of *Bailey v.*

*United States*, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). He further alleges that his § 924(c)(1) conviction and sentence placed him in double jeopardy in light of the felon-in-possession and unregistered firearm convictions. Finally, petitioner attributes his failure to object to the alleged double jeopardy to ineffective assistance of counsel.

## DISCUSSION

In *Bailey*, the Supreme Court limited the scope of the term "use", as prohibited by § 924(c)(1). The Court held that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, — U.S. at —, 116 S.Ct. at 505. "Active employment", the court specified, "certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at —, 116 S.Ct. at 508. *Bailey* thus represented a major departure from the law as it existed in this and other circuits which had interpreted "use" to include the mere "presence and availability" of a firearm in relation to a drug trafficking offense. *See, e.g., United States v. Brett*, 872 F.2d 1365, 1370 (8th Cir.1989).

While the precise issue before the court is limited, a brief description of the facts will help crystallize the dispute. Petitioner rented an apartment using fictitious application information. He paid his rent in cash, did not keep regular business hours, and maintained a regular stream of traffic into and out of his apartment. At some point petitioner became the subject of a narcotics investigation which included wiretaps on petitioner's telephone. On April 20, 1989, a search of petitioner's apartment revealed a sawed-off shotgun, a handgun and various indicia of drug trafficking activity. Petitioner was indicted and arrested in June 1989.

At trial, the government introduced recorded conversations between petitioner and his drug trafficking co-conspirators. These conversations included the following statements in a conversation with co-conspirator Serena "Renie" Nunn:

Petitioner: As soon as somebody make me mad. Once they say they gonna hurt me. That's, ... O.K., we done blew the cool shit.

Nunn: Uh-huh.

Petitioner: We ain't cool no more.

Nunn: Mmm mmmm.

Petitioner: And now I got to fuck you up.

Nunn: Right.

Petitioner: Cause it's do or die and if I don't fuck you up, you gonna fuck me up.

Nunn: Right.

Petitioner: I ain't gonna let nobody get to me.

Nunn: Mmm mmmm. It's either me or you.

Petitioner: Hell, yes.

Nunn: When it comes to yourself, fuck that.

Petitioner: Man, I ... Renie? I'll stand on this ... you know how they live on that hill?

Nunn: Mmm mmmm.

Petitioner: Renie, I'll just stand there and unload on that motherfucker.

Nunn: (Laughs)

Petitioner: And then I'll kick the door in to come in.... Yup. Man, I'll come in that motherfucker. I'm shootin' everybody, babies and all. Dead men tell no tales.

Trial Tr. II–54; Exh. 39.

The trial testimony also showed that petitioner once told his landlord that he had pulled a gun to thwart a previous mugging attempt. On a separate occasion, after learning that his landlord planned to call the police, petitioner informed her that he had shot someone in the past and would do it again; he would not permit himself to be locked up.

The charge to the jury included the following: "The phrase 'used a firearm' means having a firearm available to aid in the commission of a drug trafficking crime." Trial Tr. III–73. Petitioner's conviction on this charge mandated a 60–month sentence consecutive to the 135 and 120–month concurrent sentences he received for the other offenses.

## I. Standard of Review Under 28 U.S.C. § 2255

The charge to the jury, while correct under then-existing law, is erroneous in light of *Bailey*. However, in this collateral attack petitioner must demonstrate both: (1) "cause" excusing his failure to raise the issue on direct appeal, and (2) "actual prejudice" resulting from the instructional error. *U.S. v. Frady*, 456 U.S. 152, 167–168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *Dalton v. U.S.*, 862 F.2d 1307, 1309 (8th Cir.1988).

### A. Cause

The government does not challenge the sufficiency of petitioner's reason for failing to raise the issue in his direct appeal. *Bailey* was decided four years after the Eighth Circuit's ruling on petitioner's appeal. Moreover, appeal on this ground would have been futile in light of existing precedent.

### B. Actual Prejudice

The standard for demonstrating actual prejudice is high; petitioner must show "not merely that errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting the entire trial with error of constitutional dimension." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1595. In the erroneous-instruction context, the Eighth Circuit has described the burden this way: "[Petitioner] must show a substantial likelihood, based on 'the total context of the events at trial[,]' that [he] was convicted for conduct that is not proscribed" by the statute. *Dalton*, 862 F.2d at 1310 (quoting *Frady*, 456 U.S. at 169, 102 S.Ct. at 1595). Petitioner has met his burden.

Under the instruction given, the jury was free to convict petitioner merely on the presence of the guns in his apartment on April 20, 1989, coupled with the fact that his apartment was a "stash pad." The weapons in petitioner's apartment on April 20, 1989, would presumably always be "available to aid" petitioner in his unlawful transactions. Under *Bailey*, however, the government must demonstrate that the weapons were "actively employed" by petitioner in relation to the drug conspiracy. The statements

identified above, described by the Eighth Circuit as "macho braggadocio," do not approach the standards set by the Supreme Court.

## II. Review

### A. Conversation with Nunn

■ The government argues that this conversation reflects petitioner's "philosophy" regarding the drug trade. This is evident. However, it does not establish that petitioner actually used guns to effectuate this "philosophy". The government does not identify any evidence that petitioner "silenced" any of his drug trafficking rivals. While this may be due to the fact that "dead men tell no tales," this fact cannot relieve the government of its burden to prove the elements of the crime.

The government next argues that implicit in this discussion was a threat to co-conspirator Nunn that if she crossed him, petitioner would use his guns to silence her. This reading of the testimony is not plausible. It is clear that petitioner and Nunn were discussing their common view of "street justice". Petitioner's braggadocio is directed at some other party not present at the conversation. Moreover, the government assumes, but does not point to evidence establishing, that any guns were in petitioner's possession at the time of this "implicit threat". The conversation, however, occurred six weeks prior to the seizure upon which the § 924(c)(1) conviction was predicated.

### B. Reference to Mugging Attempt

■ Here, petitioner's admission that he once pulled a gun on a would-be mugger may have some relevance for his felon-in-possession conviction, but the government does not explain how resisting a mugging attempt, or describing it, constitutes a predicate drug trafficking offense under § 924(c)(1). The government's position rests on the theory that this statement was also a "threat". This is likewise a strained and implausible reading of petitioner's statement.

### C. "Threatening" Conversation with Landlord

■ The evidence relating the threat to his landlord, while presenting a closer question, does not eliminate the prejudice which petitioner suffered. The landlord's testimony would permit a reasonable jury to believe that petitioner had specifically warned her against going to the police, threatening violence if she disobeyed him. Significantly, however, the government identifies no evidence that petitioner was carrying a gun at the time or "brandished" a weapon to the landlord.

■ A gun is actively employed in a drug conspiracy where it is an "operative factor" in the drug transactions that form the basis of the conspiracy. *U.S. v. Lamb*, 74 F.3d 751, 752 (7th Cir.1996). The court assumes, without deciding, that a threat such as the one described by the landlord constitutes a "transaction" sufficiently related to the drug conspiracy. The court finds, however, that petitioner's reference does not constitute active employment.

The analysis articulated in *Bailey* concluded that the prior approach embraced by circuit courts "render[ed] 'use' synonymous with 'possession' ". *Bailey,* —— U.S. at ——, 116 S.Ct. at 509. It is in this context that the court must consider Justice O'Connor's observation in *Bailey* that "even an offender's reference to a firearm in his possession could satisfy § 924(c)(1)." *Id.* at ——, 116 S.Ct. at 508. The court interprets this to mean that something akin to a "knowing pat" on one's firearm, rather than a reference to some abstract, unseen firearm, constitutes active employment. Obviously, a firearm could be "carried" without any reference or display whatsoever, but the government does not argue that petitioner carried a weapon.

Two cases reaching different results under *Bailey* illustrate the distinction. In *Lamb,* the government sought to sustain a § 924(c)(1) conviction based on a statement by defendant's co-conspirator. *See U.S. v. Lamb,* 74 F.3d 751 (7th Cir.1996). The co-conspirator described how she had been startled one night by her roof falling in, a sound she mistook to be an intruder. She stated further that she grabbed her .357 Magnum, permitting the inference that she had done so to protect not only herself "but to protect her

drugs, and thus facilitate her drug trafficking activity." *Lamb*, 74 F.3d at 752.

In light of *Bailey*, the Seventh Circuit concluded that this conduct did not constitute "use" under § 924(c)(1). While the evidence demonstrated that the co-conspirator intended to use the gun if necessary, "the fact remained that the gun's use was *potential*"; it thus was not an operative factor in any of the relevant transactions. *Id.*

The Ninth Circuit recently analyzed *Bailey* under different facts. In *U.S. v. Davis*, 76 F.3d 311 (9th Cir.1996), defendant testified as follows: "I grabbed a .25 caliber automatic handgun from the coffee table. I showed it to Lopez [his co-conspirator], and I showed it to Lopez for a reason so he'd know I'd be armed, so he wouldn't be able to take advantage of me for no matter what was gonna happen [during the upcoming drug transaction]." *Davis*, 76 F.3d at 315. The court described this as "the most damaging evidence" that the defendant had "actively employed" the firearm to warn Lopez not to take advantage of him. Accordingly, he had "used" the firearm under § 924(c)(1). *Id.*

The court finds that this is the sort of firearm-aided threat that the Supreme Court described in *Bailey*. Active employment entails the physical, not the metaphysical presence of the weapon. The evidence at petitioner's trial failed to establish that any firearm was present at the time of the threat to the landlord.

In sum, while firearms evidently were part of petitioner's way of life, there simply was no evidence presented at trial to justify a conviction under the standards set by *Bailey*. The instructional error therefore posed a substantial likelihood that petitioner was convicted based on his possession of firearms. Petitioner was likely convicted for conduct which, while criminal under other statutes, was not unlawful by virtue of § 924(c)(1). Thus, petitioner's conviction and sixty-month consecutive sentence must be vacated. Because petitioner's double jeopardy and ineffective assistance claims turn on the validity of his § 924(c)(1) conviction, it is unnecessary to consider these claims.

## III. RESENTENCING

The government moves the court to increase petitioner's base offense by two levels pursuant to Sentencing Guidelines § 2D1.1(b)(1) for possessing a gun during a drug trafficking offense. The government correctly notes that *Bailey* left this enhancement undisturbed when it limited the scope of "use" under § 924(c)(1). *Bailey*, — U.S. at —, 116 S.Ct. at 509. The court denies this request.

Petitioner's successful effort to set aside his conviction does not come during direct review and remand. Rather, this is a § 2255 proceeding in which the only question is the lawfulness of petitioner's § 924(c)(1) sentence. The government points to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny, and urges that resentencing is permissible unless done out of "vindictiveness". *See U.S. v. Pimienta–Redondo*, 874 F.2d 9, 13 (1st Cir. 1989). However, these are direct review cases where, following vacation of conviction and retrial, the defendant is convicted and resentenced for the same offense. The court has identified no basis for modifying a sentence imposed for a valid conviction after a successful collateral attack on a separate, invalid conviction. To do so where the valid sentences are not properly before the court constitutes an unauthorized "sua sponte" resentencing. *See U.S. v. Fraley*, 988 F.2d 4, 6–7 (4th Cir.1993); *cf. U.S. v. Durbin*, 542 F.2d 486 (8th Cir.1976) (habeas petitioner successfully attacked enhancement of original sentence predicated upon unconstitutional prior conviction; resentencing permissibly accounted for *post-conviction* conduct).

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion pursuant to 28 U.S.C. § 2255 is granted in part and denied in part;

2. Petitioner's conviction under 18 U.S.C. § 924(c)(1), and the corresponding 60–month consecutive sentence is vacated; and

3. Petitioner's convictions and sentence in all other respects remains undisturbed.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.